Mohammed AJAZ, Plaintiff,

v.

**CONTINENTAL AIRLINES and
Mark Wauters, Defendants.**

Civ. A. No. H–93–3929.

United States District Court,
S.D. Texas,
Houston Division.

July 5, 1994.

146

Peter R. Brannan, Houston, TX, for plaintiff.

Vicki A. Birenbaum, Sewell & Riggs, Houston, TX, for defendants.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is defendant Mark Wauters' ("Wauters") Motion and Amended Motion to Dismiss for Failure to

State a Claim (Docket Entry #'s 5 & 11). After review of the pending motions, the submissions of the parties, the pleadings, and the applicable law, this court is of the opinion that Wauters' motions should be granted.

## I. Background.

Plaintiff Mohammed Ajaz ("Ajaz") worked as an aircraft mechanic for defendant Continental Airlines ("Continental") from October 1987 until his termination in August 1992. Defendant Wauters was his immediate supervisor. Ajaz alleges that defendants discriminated against him because of his national origin, Pakistani, and his religion, Muslim, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Ajaz asserts that during his employment, he was subjected to discriminatory and racially motivated comments and was harassed by supervisors and co-workers on a regular basis. He also contends that he was disciplined and ultimately terminated in retaliation for voicing concerns about discrimination. Ajaz further alleges that defendants were negligent under Texas law because they failed to provide adequate and necessary supervision to prevent discriminatory treatment of him by his fellow employees.

In his motion and amended motion to dismiss for failure to state a claim under Fed. R.Civ.P. 12(b)(6), Wauters asserts that he is not subject to liability because: (1) he was not named as a respondent in Ajaz' discrimination charge filed with the Equal Employment Opportunity Commission ("EEOC") and cannot be held liable in his individual capacity under Title VII and (2) the Texas Workers' Compensation Act precludes Ajaz from asserting a negligent supervision claim in this action.

## II. Analysis.

### A. Title VII Claim.

#### 1. Failure to Name Defendant in EEOC Charge.

■ Generally, "only parties previously identified as respondents in charges filed with the EEOC are subject to subsequent liability under Title VII." *Terrell v. United States Pipe & Foundry Co.,* 644 F.2d 1112,

1122 (5th Cir.1981), *vacated on other grounds,* 456 U.S. 955, 102 S.Ct. 2028, 72 L.Ed.2d 479 (1982). The primary purpose of an EEOC charge is to provide notice of the charges to the respondent and to activate the voluntary compliance and conciliation functions of the EEOC. *Id.; Bowe v. Colgate–Palmolive Company,* 416 F.2d 711, 720 (7th Cir.1969). The charge triggers an investigation by the EEOC so, through a conciliation process, voluntary compliance may be obtained and discriminatory practices and policies eliminated. *Terrell v. United States Pipe & Foundry Co.,* 644 F.2d at 1123. Accordingly, the scope of a Title VII suit extends "as far as, but no further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge." *Id.* The reasonable limits of the investigation potentially triggered by an EEOC charge define not only the substantive limits of a subsequent Title VII action, but also the parties potentially liable for any violation found. *Id.*

■ Applying this analysis, it appears that Wauters was not sufficiently implicated in Ajaz' EEOC charge to have reasonably triggered an investigation of his actions by the Commission. Ajaz did not name Wauters as a respondent or mention Wauters in the text of the charge. Instead, Ajaz listed Continental as the employer who discriminated against him and referred to the "airline" as the respondent in his charge. The only individual mentioned in the charge was Rick Finkin, the shift manager, who notified Ajaz of his discharge. Therefore, it is unreasonable to conclude that an EEOC investigation arising out of the charge would focus upon Wauters. Wauters was not provided fair notice of the charges or given an opportunity to participate in the EEOC's conciliation process. Consequently, Ajaz' discrimination claims against Wauters cannot stand.

#### 2. Personal Liability under Title VII.

■ Alternatively, Wauters contends that he cannot be found liable in his individual capacity under Title VII. The Act imposes liability upon employers who violate its provisions. "Employer" is defined as "a person engaged in an industry affecting com-

merce ... and any agent of such a person." 42 U.S.C. § 2000e(b). In construing the term "any agent," courts have found immediate supervisors to be employers under the Act when they have been delegated an employer's traditional rights, such as hiring and firing. *Harvey v. Blake*, 913 F.2d 226, 227 (5th Cir.1990); *Hamilton v. Rodgers*, 791 F.2d 439, 443 (5th Cir.1986). Only when the supervisor is acting in an official capacity, however, can he be deemed an "agent" of the employer. *Harvey v. Blake*, 913 F.2d at 228. Therefore, any recovery against the agent must be in his official, not individual, capacity. *Id.* The purpose of the "agent" provision in § 2000e(b) was to incorporate *respondeat superior* principles into Title VII. *Id.* The courts have found no reason to stretch liability of individual employees beyond the *respondeat superior* principles intended by Congress. *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir.1994).

 With respect to Ajaz' claim against Wauters in his individual capacity, the Fifth Circuit has made it clear that Title VII does not permit the imposition of such liability. *Id.* at 653. Indeed, the structure of Title VII indicates that natural persons who are not employers cannot be held liable for equitable damages, such as backpay and reinstatement. *Id.* Moreover, if Congress had envisioned liability for non-employer natural persons, it undoubtedly would have imposed such liability in the recent amendments to Title VII. *Id.* There is no indication in Title VII, as amended by the Civil Rights Act of 1991, that Congress intended to impose liability upon individual employees in cases of employment discrimination. *Id.* Thus, Ajaz' Title VII claim against Wauters in his individual capacity is without foundation.

### B. *Negligent Supervision Claim.*

In his original Complaint, Ajaz asserts a claim of negligent supervision against Wauters. He claims that Wauters failed to provide adequate and necessary supervision of co-workers and supervisors so that Ajaz would not be subjected to discriminatory treatment and harassment. Ajaz claims that Wauters had knowledge of discriminatory conduct by Ajaz' fellow employees, yet failed

to prevent it. Ajaz further asserts that as a direct and proximate result of Wauters' negligent supervision, Ajaz suffered and continues to suffer harm.

### A. *Physical Injury.*

 Although it is unclear exactly what "harm" Ajaz has suffered, a review of the record reveals that Ajaz received workers' compensation benefits for injuries he sustained on December 28, 1990. On that date, a co-worker pulled away a work stand on which Ajaz was standing, causing him to fall and injure his head and ear. Because Ajaz has already received benefits provided by the Texas Workers' Compensation Act ("TWCA"), Tex.Lab. Code Ann. § 401.001 *et seq.*, he is precluded from asserting a common law claim for those injuries.

 The TWCA was enacted to provide an "exclusive method for compensating employees for injuries sustained in the course of their employment." *Reed Tool Co. v. Copelin*, 610 S.W.2d 736, 739 (Tex.1980); *McAlister v. Medina Elec. Co-op., Inc.*, 830 S.W.2d 659, 663 (Tex.App.—San Antonio 1992, writ denied); *Nash v. Northland Communications Corp.*, 806 S.W.2d 952, 953 (Tex.App.—Tyler 1991, writ denied); *Lotspeich v. Chance Vought Aircraft*, 369 S.W.2d 705, 708 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.). Because the remedy provided by the TWCA is exclusive, an employee has no alternative right of action against his employer for injuries sustained in the course and scope of employment. Tex.Lab. Code Ann. § 408.001(a); *McAlister v. Medina Elec. Co-op., Inc.*, 830 S.W.2d at 663; *Lotspeich v. Chance Vought Aircraft*, 369 S.W.2d at 708. The only exception to this rule is for "injuries resulting from an intentional or willful act of the employer." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 933 (Tex.1983); *Reed Tool Co. v. Copelin*, 610 S.W.2d at 739; *Lotspeich v. Chance Vought Aircraft*, 369 S.W.2d at 708. If, however, an employee proceeds under the TWCA and files a claim for benefits, he is then estopped from asserting a common law action for intentional torts, as well. *Massey v. Armco Steel Co.*, 652 S.W.2d at 933. The filing of a claim for

benefits waives an employee's right to proceed outside the Act. *Id.*

■ In order to receive benefits under the TWCA, a claimant must show that the injury was received in the "course and scope of employment." Under the TWCA, " 'course and scope of employment' means an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by the employee while engaged in or about the furtherance of the affairs or business of the employer." Tex. Lab.Code Ann. § 401.011(12); *see Texas Gen. Indem. Co. v. Bottom,* 365 S.W.2d 350, 353 (Tex. 1963); *North River Ins. Co. v. Purdy,* 733 S.W.2d 630, 633 (Tex.App.—San Antonio 1987, no writ). Benefits are not payable if the injury arose out of an act of a third person intended to injure the employee because of a personal reason and not directed at the employee as an employee or because of his employment. Tex.Lab. Code Ann. § 406.032(1)(C); *see Shutters v. Domino's Pizza, Inc.,* 795 S.W.2d 800, 801 (Tex.App.—Tyler 1990, no writ).

■ In the instant case, because Ajaz received workers' compensation benefits, it has been established that Ajaz' physical injuries were sustained in the course and scope of his employment. If not, he would not have been entitled to compensation under the TWCA. Tex.Lab. Code Ann. § 406.031. Moreover, Ajaz' negligent supervision claim against Wauters is based on allegations of failure to act, *i.e.,* to prevent any further discrimination or harassment, which clearly do not rise to the level of intentional acts. *See Reed Tool Co. v. Copelin,* 689 S.W.2d 404, 407 (Tex.1985). Thus, Ajaz has failed to set forth sufficient facts to show that, due to Wauters' allegedly negligent supervision, he

has sustained a physical injury not within the purview of the TWCA.

B. *Emotional Injury.*

■ With respect to any emotional harm Ajaz has suffered as a result of Wauters' allegedly negligent supervision, his common law claims are likewise barred. *See Witty v. American Gen. Capital Distrib., Inc.,* 727 S.W.2d 503, 506 (Tex.1987); *Jones v. Legal Copy, Inc.,* 846 S.W.2d 922, 925–26 (Tex.App.—Houston [1st Dist.] 1993, no writ). In fact, the exclusive remedy provision contained in the TWCA precludes an employee from maintaining a negligence action against his employer for work-related emotional injuries, even if the action complained of is not compensable. *McAlister v. Medina Elec. Co-op., Inc.,* 830 S.W.2d at 663; *Lotspeich v. Chance Vought Aircraft,* 369 S.W.2d at 708. Therefore, any claims that Ajaz might assert for emotional injuries caused by Wauters' allegedly negligent supervision are not viable in view of the TWCA.

■ At best, Ajaz' claims of emotional injuries stemming from Wauters' allegedly negligent supervision are claims for negligent infliction of emotional distress. The Texas Supreme Court has expressly rejected such a cause of action, holding that "there is no general duty in Texas not to negligently inflict emotional distress." *Boyles v. Kerr,* 855 S.W.2d 593, 594 (Tex.1993).

Thus, Ajaz' negligent supervision claim is without basis, as it is barred by the TWCA or, in the alternative, is not cognizable under Texas law.[1]

III. *Conclusion.*

Ajaz has no cognizable claim against Wauters under Title VII. Ajaz, likewise, has no cognizable claim against Wauters for negli-

---

1. Moreover, the court may decline to exercise supplemental jurisdiction over state law claims if all claims against the defendant over which the court has original jurisdiction have been dismissed. 28 U.S.C. § 1367(c)(3). The decision to exercise or decline supplemental jurisdiction is entirely within the discretion of the district court. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Parker & Parsley Petroleum Co. v. Dresser Indus.,* 972 F.2d 580, 590 (5th Cir.1992); *Wong v. Stripling,* 881 F.2d 200, 204 (5th Cir.1989). In this instance, if Ajaz had asserted a viable negligent supervision claim against Wauters, the court would nonetheless decline to exercise supplemental jurisdiction over it, as Ajaz' Title VII claim against Wauters, the only claim over which the court had original jurisdiction, has been dismissed.

gent supervision. Assuming, *arguendo*, that Ajaz had asserted a viable state law claim against Wauters, the court would decline to exercise its supplemental jurisdiction over that claim. Accordingly, Wauters' Motion and Amended Motion to Dismiss for Failure to State a Claim are GRANTED. Ajaz' claims against Wauters are DISMISSED ON THE MERITS, and Wauters is DISMISSED as a defendant in this case.

IT IS SO ORDERED.